Jasen, J.
In this action on a promissory note, the question presented for our review is whether the appellants, individual guarantors of a corporate obligation, may interpose as a defense on the guarantee an alleged oral agreement that the guarantee would not become effective until the payee procured the guarantee of other specific persons as coguarantors. On this motion for summary judgment, plaintiff bank, the holder of the note and the one in whose favor the guarantee ran, argues that the appellants produced no evidence which, if *495 fully accepted, would establish conditional delivery of the endorsed note in suit, but, in any event, asserts that the defense of conditional delivery is not available, as a matter of law, to the appellants.
Special Term granted the bank summary judgment on the grounds that the alleged conditional statement was insufficient notice to the bank and that even if it were sufficient notice, "public policy estops the defendants from showing that a note made payable and delivered to a bank was not to be enforced unless there was compliance with certain oral conditions”. The Appellate Division, two Justices dissenting, affirmed.
On March 4, 1970, the bank loaned to defendant International Institute for Packaging Education, Ltd., $25,000 for a period of 90 days. A promissory note delivered to the bank for this loan was endorsed by five guarantors, Raymond D’Onofrio, defendants James W. Feeney and Robert Goldberg, and appellants Marty Rochman and Sidney Horowitz. At the time of the making of the loan, Rochman claims that he discussed with George Dean, an officer of the bank, the conditions upon which he would endorse the note and procure Horowitz’ endorsement. It was agreed, claims Rochman, that the note would be endorsed by the five afore-mentioned persons and that any renewal of the note would also require the endorsement of the same five individuals. On June 2, 1970, the bank agreed to renew the loan for another 30 days and to loan an additional $10,000. Rochman delivered a new note, which he and Horowitz had both endorsed, to William Lambui, an officer of the bank, and allegedly told him "to make sure that all the endorsements were on the Note.” Although the note was also endorsed by Feeney and Goldberg, D’Onofrio never endorsed it.[1] Nevertheless, the bank extended the loan for 30 *496 days and advanced to the International Institute the additional $10,000. When the loan was not repaid, the bank instituted this action against International Institute and the four guarantors, Rochman, Horowitz, Feeney and Goldberg.
On this appeal Horowitz and Rochman contend that, by virtue of the agreement they made with bank officer Dean, their delivery of the June 2 note was conditional upon the procurement of the endorsement by D’Onofrio, and that, since this endorsement was not obtained by the bank, the note is unenforceable as to them. As we view it, this case involves the questions of whether Horowitz and Rochman may attempt to prove such an agreement by resort to parol evidence, and, if so, whether this agreement, if proved, would bar enforcement of the note as to them. Since we would answer both questions affirmatively, we would reverse the order of the Appellate Division and deny the motion for summary judgment.
A person who is not a holder in due course takes an instrument subject to the defense of nonperformance of a condition precedent (Uniform Commercial Code, § 3-306, subd [c]). Conditional delivery is one such defense in the nature of a condition precedent (Uniform Commercial Code, § 3-305, official comment 3; § 3-306, official comment 4). Even before the enactment of the code, it had long been the rule that where the terms of the conditional delivery have not been complied with, the instrument is unenforceable and parol evidence is admissible to show that the delivery of the instrument to the payee was a conditional delivery (Smith v Dotterweich, 200 NY 299, 305-306; Saypol v McLaughlin, 274 App Div 1052, affd 299 NY 750). Among the conditions precedent which may be proved by parol evidence is that the instrument was not to take effect until the payee had procured other signatures (Baruch v Buckley, 167 App Div 113; Ann., 20 ALR 421, 440-442; Ann., 54 ALR 702, 706-707; Ann., 105 ALR 1346, 1350). Thus, an agreement that any renewal notes would be endorsed by all of the original endorsers is provable by use of parol evidence, and, if proved, would make the note unenforceable against the guarantors whose delivery was conditional upon the procurement of all such endorsements.
In granting summary judgment to the bank, Special Term stated, as noted before, that "public policy estops the défendants from showing that a note made payable and delivered to a bank was not to be enforced unless there was compliance with certain oral conditions (Mount Vernon Trust Co. v. *497 Bergoff, 272 N. Y. 192, 196).” While Mount Vernon Trust Co. did express a public policy concern that bank examiners might be deceived by an unenforceable note which appears on its face to be an asset of a bank, that case involved a totally fictitious note which was never intended to be enforced. Carried to its logical extreme, Special Term’s reliance on Mount Vernon Trust Co. could be read as supporting a view that the public policy expressed therein would prevent the maker or guarantor of a note held by a bank from ever raising any defenses to that note. This, of course, is not what was intended in that case, and it would be completely contrary to law. (Uniform Commercial Code, § 3-306.)
Nor does Meadow Brook Nat. Bank v Bzura (20 AD2d 287) suggest a different result. At first blush, that case seems nearly identical to this. There a guarantor unsuccessfully sought to defeat a motion for summary judgment by claiming that he signed the guarantee only after he was promised by a bank officer that the guarantee would not become effective unless and until a primary guarantee was first obtained from two other persons. Of vital significance in that case was the nature of the guarantee upon which the lender sought to recover. The Appellate Division described a portion of the guarantee as follows: "The guarantee provided that the guarantor 'unconditionally guarantees to the Bank’ the payment of indebtedness incurred by the company” (p 288). Thus, the alleged condition precedent in that case contradicted the express terms of the written agreement, and could therefore not be proved by parol evidence. (Hicks v Bush, 10 NY2d 488, 491.) What distinguishes Meadow Brook Nat. Bank (supra) from this case is that the guarantee here is not unconditional.[2] The condition precedent which is alleged here, namely, the procurance of other endorsements, in no way contradicts the express terms of the written agreement and, therefore, it may be proved by parol evidence. We agree with our dissenting colleague that we should not misunderstand and misapply the parol evidence rule so as to "undermine the rules of commercial and banking conduct” (p 499). Likewise, we share his *498 concern that we should not permit the exceptions to the parol evidence rule to become "the haven of either the devious or the negligent” (p 502). However, such concerns do not warrant a different result here. Our holding today does not sanction the use of "devious devices of the untrustworthy who can always conceive a less than flat contradiction to avoid their written obligations” (p 499). There is no basis in the record for characterizing the appellants as "untrustworthy”, "devious”, or "negligent”. Had the bank here merely insisted that appellant "unconditionally guarantee” repayment of the loan, as was done in Meadow Brook Nat. Bank (supra), then there would be no room for the "untrustworthy” or even the trustworthy to assert a "less than flat contradiction” of the express terms of the agreement. Our task is not to assist lending institutions in their collection matters by rewriting their agreements so as to remedy the omissions made by their draftsmen.
Accordingly, we would reverse the order of the Appellate Division and deny the motion for summary judgment.

. We note that, in the papers submitted in support of the motion for summary judgment, no affidavit was submitted by Dean and none of the papers contain a denial that Dean actually made this alleged agreement. Likewise, in his affidavit, Lambui neither denies that Rochman told him to secure "all the endorsements” on the June 2 note, nor claims that he misunderstood Rochman’s instructions.
Interestingly, Horowitz’ signature on the reverse side of the note appears below the signatures of Feeney, Rochman, and Goldberg. Assuming that it can be inferred from this order in the listing of the endorsements that the note already contained four endorsements when presented to Lambui, it would seem that Rochman’s instruction to Lambui that he "make sure that all the endorsements were on the Note” must have referred to an endorsement not already on the note—i.e., an endorsement by D’Onofrio.

. The guarantees on both the March 4 and June 2 notes provided as follows: "FOR VALUE RECEIVED, the undersigned and each of the undersigned in addition to the obligations imposed by endorsement and waiving of notice of every character and nature, hereby become a party to, adopt, agree to, accept, guarantee and assume all the terms, conditions and waivers contained in the note on the reverse side hereof, and guarantee the payment of said note when due and consent without notice of any kind to any and all extensions of time made by the holder of said note.”