582 P.2d 1094

**FARMERS & MERCHANTS STATE BANK, Plaintiff-Respondent,**

v.

**G. K. LLOYD, a/k/a Gary K. Lloyd, Defendant-Appellant.**

**No. 12188.**

Supreme Court of Idaho.

July 19, 1978.

Rehearing Denied Sept. 19, 1978.

Calvin G. Dworshak, Boise, for defendant-appellant.

James E. Risch of Risch & Goss, Boise, for plaintiff-respondent.

SHEPARD, Chief Justice.

This is an appeal from an order of summary judgment entered in favor of plaintiff-respondent Farmers and Merchants State Bank in an action to collect upon a promissory note against defendant-appellant G. K. Lloyd, also known as Gary K. Lloyd. We affirm.

The following facts are established and unquestioned. On various occasions since November 6, 1972, Lloyd has borrowed sums of money from the bank. Those transactions were evidenced by promissory notes. On November 20, 1974, Lloyd was indebted to the bank for the sum of $9,271.92. At that time he executed a promissory note in that amount in consideration for an extension on the due date on the previous monies loaned by the bank and the interest due thereon. The new note was due on or before May 20, 1975. No portion thereof has been paid and the face amount of that note, interest and attorney's

fees have been due and owing the bank since May 20, 1975.

The sole defense asserted by Lloyd is that the last note, dated November 20, 1974, was delivered to the bank upon certain "conditions" and that those conditions have not been met. Those conditions were: first, that the bank deliver a truth-in-lending statement; second, that the bank provide a record of Lloyd's previous transactions with the bank; and finally, that the bank deliver the notes previously executed by Lloyd.

 The trial court correctly held that neither the truth-in-lending portion of the Consumer Credit Protection Act, 15 U.S.C. §§ 1631–1643 (1970) (now 15 U.S.C. §§ 1631–1643 (1976)), nor the Uniform Consumer Credit Code, I.C. § 28–33–101, provide that failure to receive a truth-in-lending statement is a defense to an action to collect on a note. Attached to plaintiff bank's affidavit in support of its motion for summary judgment is a copy of a loan ledger indicating transactions between Lloyd and the bank dating from November 6, 1972. Lloyd does not by affidavit or otherwise complain this is insufficient to satisfy his asserted need to know of previous transactions between him and the bank.

 The Uniform Commercial Code of this state, at I.C. § 28–3–605, provides that the holder of an instrument may discharge the maker "(b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged." (Emphasis supplied.) It is further provided, at I.C. § 28–3–302(1)(c), that a bona fide purchaser for value of a negotiable instrument must have taken the instrument prior to its date of maturity, otherwise all defenses remain available to an obligor. The previous notes were overdue on May 20, 1975, and obviously no later holder could successfully assert the status of a bona fide purchaser for value, but would only hold subject to the defense of cancellation available to Lloyd. The affidavit of the bank stated that all prior notes had been canceled and that the defendant was not indebted to the bank on any prior notes. Under the statute, we hold such is

an effective renunciation of the rights of the bank and an effective defense in Lloyd to any later action on the prior notes. Since no detriment to Lloyd does nor will exist by reason of nonsurrender of the prior notes and the bank has and can gain no profit thereby, the surrender of the prior notes, if a condition at all, is an immaterial condition to collection on the later note.

We recognize the existence of pre-U.C.C. cases which, under some circumstances, reach a contrary result. Such cases usually are based on circumstances involving multiple obligors or intervening rights of holders which are not the original obligees. See *Abrams v. American Security & Trust Co.*, 72 App.D.C. 79, 111 F.2d 520, 129 A.L.R. 368 (1940); *First Natl. Bank v. Mathey*, 308 Mass. 108, 31 N.E.2d 25 (1941); *Ann Arbor Contr. Co. v. Glime Constr. Co.*, 369 Mich. 669, 120 N.W.2d 747 (1963); *Phenix Natl. Bank v. Raia*, 68 R.I. 348, 28 A.2d 20, 141 A.L.R. 1474 (1942).

The orders of the district court are affirmed. Costs to respondent.

DONALDSON, J., and DUNLAP, J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

We review a record establishing facts which, if proved at trial, would constitute a good defense to the Bank's present action on the promissory note in question.

It is not disputed that since November 6, 1972, Lloyd has borrowed various sums of money from the Bank, executing several promissory notes as evidence of his indebtedness. From time to time he made payments to the Bank which the Bank apparently applied to the outstanding balance on the various promissory notes. On November 20, 1974, Lloyd was indebted to the Bank in the amount of $11,500.00 on but one promissory note, then about two months overdue. On that day he made a payment of $2,228.08. He was requested to and did execute a new promissory note in the amount of $9,271.92, which sum was the unpaid balance on the prior note.

Lloyd does not dispute that he is indebted to the Bank in an amount which is equal to the amount of the November 20, 1974, promissory note. Neither does he dispute that the note was to be in payment of an antecedent obligation. Nor does he dispute the sole point argued by the Bank, viz., that a note given for an antecedent debt requires no consideration, I.C. § 28–3–408. Rather, Lloyd argues that he had the right to and did expressly condition the delivery of the renewal promissory note upon the doing of certain things by the Bank, and that the failure of the Bank to fulfill the conditions is a defense to an action on the note, citing I.C. §§ 28–3–306, 28–3–307. In particular, Lloyd states in affidavits filed in opposition to the Bank's motion for summary judgment that he made the new note and delivered it to the Bank only upon the express condition that he receive a truth-in-lending statement, copies of all prior transactions with the Bank, and the prior note, canceled.

Under those facts, which we must accept on review of a summary judgment proceeding, the only question before the Court is whether the trial court properly gave judgment to the Bank on a note which was delivered with the understanding that it would not become effective until the performance of certain conditions,[1] which conditions have not yet been met.

The Idaho Uniform Commercial Code expressly provides that conditional delivery is a defense to an action on a note:

> Unless he has the rights of a holder in due course, any person takes the instrument subject to
>
> .　　.　　.　　.　　.
>
> (c) the defense of want or failure of consideration, *nonperformance of any condition precedent*, nondelivery, or delivery for a special purpose (section 28–3–408); and

I.C. § 28–3–306 (emphasis added). Several post-U.C.C. cases establish that an instru-

ment given for sufficient consideration or for which no consideration is required— such as here where the note was given for an antecedent obligation, I.C. § 28–3–408— may still be conditionally delivered. *Long Island T. Co. v. International Inst., Pkg. Ed., Ltd.*, 38 N.Y.2d 493, 381 N.Y.S.2d 445, 344 N.E.2d 377 (1976); *Paramount Distillers, Inc. v. Brookside Distilling Products Corp.*, 1 U.C.C.Rep. 249 (Pa.Ct.C.P., Lackawanna Co. 1960); *Nawas v. Holmes*, 541 S.W.2d 283 (Tex.Civ.App.1976).

It must be remembered that the provisions of the Uniform Commercial Code were not drafted on a clean slate. To a large extent the U.C.C. codifies the common law of commercial transactions. Chapter 3, which concerns us here, represents a revision and modernization of the Uniform Negotiable Instruments Law which was enacted in Idaho. I.C. § 28–3–101, official comment. To the extent that a particular provision of chapter 3 represents a continuation of, rather than a departure from, prior law, pre-U.C.C. cases provide excellent guidance as to the proper interpretation of the U.C.C. language. The section which codified the defense of conditional delivery, I.C. § 28–3–306, "does little more than summarize basic rules of contract law." White and Summers, Uniform Commercial Code § 14–11 (1972).

Even before the enactment of the Uniform Commercial Code, it was the rule in Idaho that where the terms of the conditional delivery have not been complied with, the instrument is unenforceable. In a case involving a note which was allegedly delivered with the understanding that it would not become effective until a certain real estate deal went through, this Court held:

> There is no question but that a conditional delivery, as set up in the answer and testified to by the appellants, would have been a defense to appellants as against MacMullin. It was a defense against respondent unless it was a holder

---

1. Whether Lloyd can actually prove that the note was conditionally delivered is not a present concern. Lloyd has alleged that it was so delivered, and the Bank has not disputed his

claim. Lloyd is entitled to a chance to prove the facts which would constitute a conditional delivery defense if such a defense is available.

in due course. [Citation omitted.] Parol evidence is admissible to show such a conditional delivery. [Citations omitted.] Further, upon appellant's producing evidence that the note was delivered to take effect upon a condition which was not fulfilled, the burden was upon respondent to show that it took without notice. [Citations omitted.] The fact that the note was delivered to take effect upon a condition which was not fulfilled would constitute a defect in the title of the payee MacMullin, who negotiated it to respondent . . . .

*First Nat'l Bank of Rigby v. Campbell*, 39 Idaho 736, 741, 230 P. 43, 44 (1924). *Accord, New England Nat'l Bank v. Hubbell*, 41 Idaho 129, 238 P. 308 (1925). This rule was also the law elsewhere in the United States. *E. g., Witherspoon v. Pusch*, 141 Colo. 525, 349 P.2d 137 (1960); *White Showers, Inc. v. Fischer*, 278 Mich. 32, 270 N.W. 205 (1936); *Craigmile v. Sorenson*, 239 Minn. 383, 58 N.W.2d 865 (1953); *Bailey v. Westmoreland*, 251 N.C. 843, 112 S.E.2d 517 (1960); *Bredouw v. Jones*, 431 P.2d 413 (Okl.1966); 11 Am.Jur.2d Bills and Notes §§ 279, 664. *See also Wetzell v. Bussard*, 24 U.S. (11 Wheat.) 309, 6 L.Ed. 481 (1826) (Marshall, C. J.).

The theory behind the cases cited above is that when an instrument is conditionally delivered, it does not become a valid and enforceable obligation until the conditions have been fulfilled. *E. g., Witherspoon v. Pusch, supra; Kelley v. Carson*, 120 Ga.App. 450, 171 S.E.2d 150 (1969); *New England Nat'l Bank v. Hubbell, supra; First Nat'l*

*Bank of Rigby v. Campbell, supra; White Showers, Inc. v. Fischer, supra; Craigmile v. Sorenson, supra; Long Island T. Co. v. International Inst., Pkg. Ed., Ltd., supra; Bailey v. Westmoreland, supra; Bredouw v. Jones, supra.* Thus, if the note in this case was conditionally delivered and if those conditions have not been performed, the Bank is not yet entitled to sue on *this* note and have a judgment entered in its favor. This is so simply because the note has never ripened into an enforceable obligation. Accordingly, I am unable to understand on what theory the majority reaches the result which it achieves here, where it does not hold that a negotiable instrument may not be conditionally delivered, but, in review of a summary judgment disposition, nullifies each of the alleged conditions precedent.

With regard to the first condition, the majority agrees with the trial court that neither the truth-in-lending portion of the federal Consumer Credit Protection Act nor the Idaho Uniform Consumer Credit Code provide that failure to receive a truth-in-lending statement is a defense to an action to collect on a note. That holding is completely irrelevant to the existing factual issue as to conditional delivery. Lloyd does not claim that the Bank was required *by law* to deliver a truth-in-lending statement to him, but that *he* conditioned *his delivery* of the note upon the receipt by him of such a statement.[2] The Bank does not deny Lloyd's claim; were it denied, that denial would merely solidify the issue of fact to be tried.

---

**2.** Even if it were relevant here, the majority is clearly wrong that failure of a lender to comply with the disclosure provisions of the Consumer Credit Protection Act can not be raised as a defense by an aggrieved debtor in an action to collect on the debt. Section 1640 of that act provides that if a creditor fails to comply with any of the act's disclosure requirements, the affected person is entitled to a monetary award. 15 U.S.C. § 1640 (1976). This award could be used as a partial defense to or set off against the amount owing on a note. 15 U.S.C. §§ 1610(d), 1640 (1976); *Wheeler v. Adams Company*, 322 F.Supp. 645, 659 (D.C.Md.1971).

The majority is even more clearly wrong as to the Idaho Uniform Consumer Credit Code.

All of the private civil remedies available for violation of any of the provisions of the UCCC, including disclosure (truth-in-lending) provisions are grouped together in chapter 35, "Remedies and Penalties", I.C. §§ 28–35–101 to 302. Among the remedies provided the debtor is one which exactly parallels the remedy of the Truth in Lending Act for violation of disclosure provisions. I.C. § 28–35–203. In addition, it is explicitly provided that: "Refunds or penalties to which the debtor is entitled pursuant to this Part *may be set off against the debtor's obligation*, and *may be raised as a defense to a suit on the obligation* without regard to the time limitations prescribed by this Part." I.C. § 28–35–205 (emphasis added).

The majority disposes of Lloyd's second condition precedent on the basis that Lloyd does not by affidavit or otherwise establish that his need to know of prior transactions was not satisfied by a loan liability ledger which the Bank tendered into court as the accounting sought by Lloyd. To the contrary, in an affidavit filed with the court two weeks after the Bank produced the ledger, Lloyd alleged that the Bank had failed to keep his various accounts straight and that "[y]our affiant had made repeated requests for accountings . . . but has never received the same . . . ." After examination of the ledger sheet, I would have to agree with Lloyd that, standing alone, it is insufficient as an accounting.[3] At any rate, the sufficiency should be left to a jury and is inappropriately decided by an appellate court on review of summary judgment, where the evidence is to be accepted in favor of the non-moving party. *Layh v. Jonas*, 96 Idaho 688, 535 P.2d 661 (1975); *Straley v. Idaho Nuclear Corp.*, 94 Idaho 917, 500 P.2d 218 (1972).

Finally, the majority attempts to show that "the surrender of the prior notes, if a condition at all, is an *immaterial condition* to collection on the later note" because Lloyd is adequately protected from suit on the old notes even without their surrender. (Emphasis added.) Again, it is entirely irrelevant to the issue in this case whether or not Lloyd is protected from suit on the old note.[4] If, in fact, the delivery of the new

---

**3.** It is not difficult to see why Lloyd might regard the "loan liability ledger" as insufficient. Even upon diligent and detailed examination of that document, it is impossible to get a clear understanding of the transactions between these parties. In fact, the ledger may well be incomplete. For example, the first entry is a debit of $4,000.00 representing a loan made in November 1972, while the second entry is a notation on December 6, 1972, that interest paid to date was $1,206.72. The latter figure could not possibly represent one month's interest on $4,000.00—something must have transpired which is not recorded on this ledger.

**4.** On the basis of the record before us, it can not properly be concluded that Lloyd *is* adequately protected from suit on the old note. In the first place, it can not be concluded that the old note was canceled. Discharge of a party by *cancellation* is provided for in I.C. § 28–3–605(1)(a) and *must* be done "in any manner apparent on the face of the instrument or the indorsement, as by intentionally canceling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature." I.C. § 28–3–605(1)(a) and official comment 1. The Bank alleges in its affidavit that the old note has been canceled but it does not attach to the affidavit a sworn certified copy of the document as required by I.R.C.P. 56(e). Neither the district court nor this Court has been afforded an opportunity to examine the note to determine whether or not it has been cancelled in the manner provided for by law.

In the second place, even if the Court holds that the statements in the Bank's affidavit are an effective renunciation of its rights against Lloyd on the prior note, that discharge pursuant to I.C. § 28–3–605(1)(b) is good protection for Lloyd only as between himself and the Bank or a subsequent holder who took with notice of the discharge. "To the extent that a holder is a holder in due course he takes the instrument free from . . . (2) *all defenses* of any party to the instrument with whom the holder has not dealt except . . . ." I.C. § 28–3–305 (emphasis added); I.C. § 28–3–602.

In making the statement that Lloyd is protected, the majority assumes that there is *no* possibility that these notes can be or were negotiated to a holder in due course. This assumption is premised on a misstatement of the law. I.C. § 28–3–302(1)(c) does *not* state as the majority claims, that "a bona fide purchaser for value of a negotiable instrument must have taken the instrument *prior to its date of maturity*." Rather it states that such purchaser must take "without *notice that it is overdue.*" I.C. § 28–3–302(1)(c). The intent of this language is clearly spelled out in the official comment:

The language "without notice that it is overdue" is substituted for that of the original subsection (2) in order to make it clear that the purchaser of an instrument *which is in fact overdue may be a holder in due course* if he takes it without notice that it is overdue. (Emphasis added)

I.C. § 28–3–302, official comment 1 (emphasis added). Whether a purchaser took without notice that an instrument was overdue would be a question of fact. Here we do not have the note before us so we do not even know whether it bore its due date on its face.

I would concede that it is highly unlikely that the prior note has found its way into the hands of a holder in due course. Again, however, that would be a question of fact, one which is not conclusively resolved on the record before us. The Bank had not alleged that the prior note is still in its possession, or even that the note was in its possession when the renewal note was executed. I realize that the Bank has

note was conditioned on surrender of the old note (or notes), Lloyd is entitled to have that exact condition fulfilled before the new note becomes an enforceable obligation. To my mind it is not at all unreasonable or unusual to ask for and expect to receive notes replaced by cash and/or demand notes.

The Court's holding that a condition may be disregarded when it is "immaterial," is fresh law, supported by no citation of authority. My own research has produced nothing upon which to support the proposition that a condition must be "material." In addition to the reported decisions cited hereinabove, see 1A Corbin on Contracts §§ 215, 250, 251 (1963); 3A id. §§ 628, 660A (1960); Restatement (Second) of Contracts § 103 (Tent. Draft Nos. 1–7, 1973); 4 Williston on Contracts §§ 634, 644 (3d ed. 1961); 10 id. § 1138 (1967). The conclusion seems unavoidable that the defense of conditional delivery is in no way restricted to certain types of conditions which are regarded by a judicial mind as "material."

Whether to let the prior note ride or to retire it upon receipt of part payment and a renewal note was for the parties to determine upon such terms or conditions as they saw fit. Lloyd was under no obligation to execute a new note and could have left the Bank to its remedy on the prior note. Likewise, the Bank was under no obligation to accept a note with "immaterial" conditions attached, and could have sued Lloyd on the overdue note which it held. But, if the new note was conditionally delivered and was accepted by the Bank under those conditions, then I would hold that those conditions must be fulfilled.

The conditions stated by Lloyd are not trivial as the majority opinion seems to indicate. Lloyd states his belief that, looking at all of the transactions between himself and the Bank, there might be a question of usury. He claims also that he needs an accounting because the Bank has dealt

with his various accounts, merging them and making set-offs, without distinguishing between Lloyd in his individual capacity and Lloyd as agent of Averyl Building Associates. Finally, it is noteworthy that the Bank has never offered to explain its failure to produce this "worthless piece of paper" (as the Bank refers to the prior note). Would it not have been a simple matter for the Bank to have surrendered the old note to Lloyd, or, on being challenged, to explain away the failure to do so? Common sense suggests an affirmative answer.

My vote is to reverse the summary judgment, which is not to say that the Bank is in any way precluded from pursuing Lloyd on the prior note, or on the note in question upon meeting the conditions precedent.

BAKES, J., concurs.

---

alleged that the prior notes have been canceled and I am not suggesting that the Bank has attempted to mislead the Court. I am suggesting that for Lloyd's complete protection, which he is clearly entitled to, this problem should be

cleared up in a straightforward manner—by requiring the Bank to tender the allegedly canceled notes into court so that there can be no doubt that Lloyd will be fully protected from double recovery.