623 P.2d 145

VENTURES, INC., an Oregon Corporation, Plaintiff, Counter-Defendant, Appellant,

v.

T. J. JONES, III, Defendant and Third-Party Plaintiff, Counter-Plaintiff, Respondent,

and

VENTURES, INC., an Oregon Corporation, Plaintiff, Counter-Defendant, Appellant,

v.

Peter SCHERER, Defendant, Third-Party Plaintiff, Counter-Plaintiff, Respondent,

and

VENTURES, INC., an Oregon Corporation, Plaintiff, Counter-Defendant, Appellant,

v.

R. E. AMES, Defendant, Third-Party Plaintiff, Counter-Plaintiff, Respondent,

v.

Dwight JOHNSTON, Third-Party Defendant, Respondent,

and

VENTURES, INC., an Oregon Corporation, Plaintiff, Counter-Defendant, Appellant,

v.

Joseph G. FULLER, Defendant, Third-Party Plaintiff, Respondent.

No. 13000.

Supreme Court of Idaho.

Jan. 29, 1981.

Richard Rosenberry of Rettig & Rosenberry, Caldwell, for plaintiff, counter-defendant, appellant.

William J. Tway of Tway & Tway, Boise, for respondents.

DONALDSON, Justice.

R. E. Ames, one of the defendant-respondents, owned certain orchard property in

the Emmett, Idaho, area. As a consequence of indebtedness, Ames transferred title to this property to plaintiff-appellant Ventures, Inc. [hereinafter Ventures] but reserved the right to repurchase. Ames then formed Orchards, Inc. [hereinafter Orchards]. The 1967 annual statement listed the officers of Orchards as R. E. Ames, president, D. L. Johnston, vice-president, T. J. Jones, III, secretary and Z. Peter Scherer, treasurer. The directors included Ames, Johnston, Jones, Scherer, Joseph G. Fuller, Floyd Hodges and, as added in the 1968 annual statement, Robert Callender.

Ames assigned his right to repurchase the orchard property to Orchards. Orchards agreed with Ventures to purchase the property. Orchards also assumed the management of the property. Thereafter, in an attempt to generate operating capital for the orchard property, Orchards and Ventures jointly negotiated a note and first mortgage on the property to Travelers Insurance Company.

The orchard operation was not successful. Additional capital was sought. Orchards borrowed money from Inter-Mountain State Bank and the Farmers Home Administration. The loan from the bank, approximately $70,000.00, was secured by a guaranty signed by the four defendants-respondents, Ames, Fuller, Jones and Scherer, along with Johnston and Hodges.

The orchard operation continued to be unsuccessful. Orchards became overdue on its debts to the bank and the FHA and on its obligations under the land purchase contract with Ventures. Under these circumstances, the bank sought to improve its position in order to avoid an accounting write-off and as a supplement to the guaranty it already held, took additional security upon the debt in the form of individual promissory notes signed by the same six who had previously signed the guaranty. Additionally, the bank took stock pledges from Johnston, and he executed guarantees of each of the other five individuals' notes. These notes, which form the center of this controversy, were never paid by the individuals.

The orchard operation was a failure. The land purchase agreement with Ventures was forfeited. Approximately a year after the execution of the promissory notes, Johnston, who was also the president of Ventures, paid the interest due on them and Ventures provided a $70,000.00 note to the bank secured by a second mortgage on the orchard property. Subsequently, Ventures transferred its title to the realty to H.J. & W., a partnership made up of Johnston, Hodges and one Jim Wallace. H.J. & W. in turn found a purchaser for the property and made an assignment of the proceeds of the contract sale to the bank. Following this arrangement, the bank assigned the six promissory notes to Ventures. However, the bank continued to hold the original guaranty.

The six promissory notes were due on or before January 28, 1971. Approximately two weeks before the due date, the bank sent out a notice to the signators of the due date and the amount due. However, the bank made no further demands on the signators and initiated no actions against them to collect the notes. The notes were assigned to Ventures on January 19, 1976, approximately five years past maturity. A short time thereafter, Ventures brought actions for payment to it as holder of the notes against Ames, Fuller, Scherer and Jones, which actions were consolidated for trial without jury. The defendants in turn cross-claimed against Inter-Mountain State Bank and named as additional third-party defendants both Johnston and Frank Callender, president of the bank and brother of Robert Callender, a director of Orchards.

At trial, Ames, Fuller, Scherer and Jones denied liability on the notes. They contended that pursuant to an unwritten agreement between the bank and the parties, the notes were executed at the request of the bank solely as additional interim security for the underlying debt and that the notes were to be in effect only until Ventures substituted in the second mortgage on the property. Both Ventures and Inter-Mountain State Bank disputed respondents' contention and maintained that

the notes were given as good faith security for the indebtedness with the expectation that they would be paid if Orchards did not meet its obligations.

The trial court noted the confusion and difficulties caused by the lack of any written agreement concerning the exact underlying nature of these promissory notes and commented upon the anomalous condition created wherein Ventures would hold the notes given to secure the obligation of Orchards and the bank would hold the original guaranty given to secure the same obligation. The court stated its belief that no one could rationally argue that the defendants would be liable to both the bank and Ventures on only the one obligation. The court, pointing to the inter-connection between management of Orchards and Ventures and the two companies' past joint dealings, and considering the request made by respondent Fuller for return of the notes from the bank as an indication of the temporary nature of the notes, held that at the time the notes were given to the bank, they were given and received as additional security until substitute security was given in the form of a second mortgage from Ventures. Upon that mortgage being given, any obligation on the notes was extinguished and the bank's rights in relation to the defendants were based only upon the guarantees that had previously been given and which were still in effect. Therefore, the transfer of the notes to Ventures did not transfer an enforceable obligation. Ventures appeals this holding.

■ Initially, we make note that this is an action on promissory notes and subject to the Uniform Commercial Code—Commercial Paper, I.C. § 28–3–101 et seq. Accordingly, we first turn to I.C. § 28–3–302 which provides in pertinent part:

"Holder in due course.—(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

The record reflects that the notes in question were in fact overdue when taken by the appellant and that it certainly had notice of this. The notes were transferred to appellant in 1976. On their face, the notes provided the maturity date of January 28, 1971. The notes were overdue when taken, appellant was upon notice and, thus, appellant cannot be a holder in due course and holds subject to all defenses available to respondents-obligors. *Farmers & Merchants State Bank v. Lloyd*, 99 Idaho 416, 582 P.2d 1094 (1978).

I.C. § 28–3–306 provides the rights of one not a holder in due course:

"Unless he has the rights of a holder in due course any person takes the instrument subject to

(a) all valid claims to it on the part of any person; and

(b) all defenses of any party which would be available in an action on a simple contract; and

(c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or *delivery for a special purpose* (section 28–3–408); and

(d) the defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive indorsement. The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party." (Emphasis added.)

In their pleadings, respondents raised the affirmative defense, generally stated here, that the notes were not given for consideration but were given at the request of the bank as additional security only and were to be returned when substitute security could be provided in the form of a mortgage from appellant. Respondents had the burden of establishing this defense, I.C. § 28–3–307, and the district court found and concluded

they had done so. The issue on this appeal is whether that defense is good as against the appellant, pursuant to I.C. § 28–3–306, and whether admission of evidence of that defense in some manner violates the parol evidence rule which excludes evidence of prior or contemporaneous oral agreements which would vary a written contract.

In applying chapter three of the U.C.C., to the extent that particular provisions of the chapter represent a continuation of, rather than a departure from prior law, pre-U.C.C. cases provide guidance as to the proper interpretation of U.C.C. language. *Farmers & Merchants State Bank v. Lloyd, supra* at 419, 582 P.2d at 1097 (Bistline, J., dissenting opinion). I.C. § 28–3–306 "does little more than summarize basic rules of contract law." J. White & R. Summers, Uniform Commercial Code § 14–10 (1980). Thus, even before the enactment of the Uniform Commercial Code, it was the rule in Idaho that where promissory notes are given subject to conditions upon their delivery, observance of those conditions is essential to the validity of the notes and that the annexing of such conditions to the delivery is not an oral contradiction of the written obligation. *First National Bank of Idaho v. Reins*, 42 Idaho 720, 726, 248 P. 9, 11 (1926). *Accord New England National Bank v. Hubbell*, 41 Idaho 129, 238 P. 308 (1925); *First National Bank of Rigby v. Campbell*, 39 Idaho 736, 230 P. 43 (1924). *But cf. Central Bank of Bingham v. Perkins*, 43 Idaho 310, 251 P. 627 (1926) (evidence admissible to prove oral agreement that note is effective only upon performance of condition but not admissible to prove agreement that obligor would not be required to pay note to bank).

■ The theory behind the cases cited above is that when a note is delivered subject to a condition, it does not become enforceable until the condition has been fulfilled. This theory has continued application in the code in I.C. § 28–3–306(c), which lists the defense of nonperformance of any condition precedent as available against one not a holder in due course. Also listed in § 28–3–306(c) is the defense of delivery for a special purpose. By analogy, it follows that those cases cited above also lend support to the theory in the instant case that when a note is delivered for a special purpose, upon the fulfillment of that purpose or upon the use of the note for other than that purpose, the note is not enforceable. *Accord, Robinson v. Linn*, 65 P.2d 669 (Or. 1937).

Post-U.C.C. cases interpreting chapter three have generally held that one not a holder in due course takes a note subject to the defense that delivery was for a special purpose only and that proof of such delivery pursuant to an alleged collateral agreement is not precluded by the parol evidence rule. *See, Farmers & Merchants State Bank v. Lloyd, supra* (Bistline, J., dissenting opinion); *Brames v. Crates*, 399 N.E.2d 437 (Ind. 1980); *Chera v. The Shores*, 145 N.J.Super. 19, 366 A.2d 994 (1976); *Nawas v. Holmes*, 541 S.W.2d 283 (Texas 1976); *American Underwriting Corp. v. Rhode Island Hospital Trust Co.*, 303 A.2d 121 (R.I.1973); *La Voie v. Celli*, 61 Misc.2d 126, 304 N.Y.S.2d 671 (1969); Annot., 23 A.L.R.3d 932 (1969). The case of *Brames v. Cates, supra*, specifically provides: "Moreover, parol evidence is admissible to show that a promissory note was delivered merely as security for the performance of collateral oral agreement." *Id.* at 442.

■ The language of I.C. § 28–3–306(c) concerning the defense of delivery for a special purpose had been interpreted as meaning that

"[d]elivery to a holder, transferee, or other person by issuance, negotiation, or otherwise upon the understanding that the recipient is to use the instrument in a certain way or for a certain purpose is a defense against other than a holder in due course when that purpose is violated . . . .

"An issuer or transferor may designate almost any special purpose . . ."

F. Hart & Willier, Commercial Paper under the Uniform Commercial Code § 12.28 (1976). Parol evidence is admissible to prove the terms of the underlying transaction. *Id.*

In the instant case, the facts as delineated in the district court's memorandum opinion show that the bank participated in the unwritten agreement that the notes were to be interim security only. The findings show that the bank wanted the notes to satisfy bank examiners to avoid a write-off of the Orchards account and that one of the respondents did request return of the notes from the bank following submission of the mortgage. The court viewed this latter finding as indication of the understanding that the notes were given only until adequate security was substituted.

The district court also found that there was an interconnection of management between appellant and Orchards, that appellant had an interest in Orchards' meeting its contractual obligations, that there had been in the past joint assumption of financial obligation by appellant and Orchards and that Johnston, the president of appellant Ventures, gave a like promissory note at the same time as respondents, also executing guarantees of the respondents' notes. Further, the court found that appellant actually did give a mortgage to the bank consistent with respondents' claim.

Based upon its findings showing the circumstances of the note transaction and the close involvement of all the parties concerned, the district court concluded that the notes had been given and received for the special purpose of interim security and were to serve only as additional security until substitute security could be provided in the form of a mortgage from appellant. Consequently, appellant, knowing the notes were overdue and knowing of the circumstances giving rise to the defense of special purpose, could not be a holder in due course, I.C. § 28–3–302, *supra*, but took the notes subject to that defense under I.C. § 28–3–306(c), which properly could be asserted by parol evidence. Substantial and competent evidence sustains the court's findings as to the notes and such will not be disturbed by this Court on appeal. I.R.C.P. 52(a); *Jensen v. Bledsoe*, 100 Idaho 84, 593 P.2d 988 (1979); *Courtright v. Robertson*, 99 Idaho 575, 586 P.2d 265 (1978).

Accordingly, we affirm the district court's holding that the notes were given and received as additional security. The court did not err in admitting parol evidence, which did not alter written terms but, rather, served the valid purpose of proving the applicable defense of delivery for a special purpose. Further, it follows that the court did not err in holding that upon the substitute security being given, the mortgage from appellant, any obligation on the notes was extinguished and that transfer of the notes did not transfer an enforceable obligation.

Appellant raises the additional issue of whether it is entitled to recover from the respondents on a theory of contribution. The district court in its memorandum opinion noted that the presentation of the evidence was on the theory that the respondents were liable on the notes. The issue of contribution was not before the court and issues not raised below will not be considered by this Court for the first time on appeal. *E. g., Silver Syndicate, Inc. v. Sunshine Mining Co.*, 101 Idaho 226, 611 P.2d 1011 (1979); *McNeil v. Gisler*, 100 Idaho 693, 604 P.2d 707 (1979); *Unigard Insurance Group v. Royal Globe Insurance Co.*, 100 Idaho 123, 594 P.2d 633 (1979).

Judgment affirmed. Costs to respondents. No attorney fees.

BAKES, C. J., and McFADDEN, BISTLINE and SHEPARD, JJ., concur.