**INTERCONTINENTAL MONETARY CORP., Plaintiff,**

v.

**PERFORMANCE GUARANTEES, INC., Fred Hayward, and Hayward & Company Limited, Defendants.**

No. 88 Civ. 4462 (RLC).

United States District Court, S.D. New York.

Jan. 27, 1989.

---

Rosemary C. Byrne and Cadwalader, Wickersham & Taft, New York City (Jean E. Burke, of counsel), for plaintiff.

Franklin, Weinrib, Rudell & Vassallo, P.C., New York City (Neil Rosini, of counsel), and Dern, Mason & Floum, P.C., Los Angeles, Cal., for defendant Performance Guarantees, Inc.

OPINION

ROBERT L. CARTER, District Judge.

In an opinion filed November 10, 1988, *Intercontinental Monetary Corporation v. Performance Guarantees, Inc., et al.* No. 88 Civ. 4462, (S.D.N.Y. Nov. 10, 1988) [1988 WL 125679] (hereinafter cited as "November 10 opinion"), the court reserved decision in this case on the issue of whether defendant Performance Guarantees, Inc. ("PGI") consented to the jurisdiction of the Southern District of New York. Decision was also reserved on a motion by PGI for a transfer of the case pursuant to 28 U.S.C. § 1404(a). An evidentiary hearing was held December 12, 1988, (the "December 12 Hearing") on the jurisdictional issue. Prior to the hearing, plaintiff Intercontinental Monetary Corporation ("IMC") moved for reargument of a holding in the November 10 opinion that is relevant to a determination of the consent issue. PGI opposed this motion and, in addition, cross moved for sanctions on the grounds that IMC's motion for reargument was not warranted by existing law or a good faith argument for its modification. The substantive issues raised by the contested holding were thoroughly briefed by both parties in their submissions on IMC's motion for reargument, so no further argument is needed for the court to decide the ultimate question raised by that motion.

The general factual background of the case is described in the court's November 10 opinion. The consent to jurisdiction issue presently before the court concerns the legal effect of a Term Loan And Security Agreement ("loan agreement") which PGI signed and transmitted to IMC on or about May 31, 1988, along with a number of other documents needed to close the loan described in the loan agreement. The loan agreement contains a choice of forum clause which provides that:

This Agreement shall be construed in accordance with and governed by the laws of the State of New York without giving effect to the principles thereof relating to the conflict of laws. For any dispute arising under this agreement or in connection therewith, Borrower hereby irrevocable [sic] submits to, consents to, and waives any objection to, the jurisdiction of the courts of the State of New York or the United States courts for the Southern District of New York.

*Intercontinental Monetary Corporation v. Performance Guarantees, Inc., et al.,* No. 88 Civ. 4462, Hearing, December 12, 1988, Plaintiff's Exhibit 1, Art. 14(j) (hereinafter cited as the "loan agreement").

The packet of documents which included the loan agreement was transmitted to IMC under cover of a letter from PGI's attorney, Kenneth H. Wennergren, (the "Wennergren letter"). This letter contains the following passage, upon which PGI relies in claiming that its consent to jurisdiction contained in the loan agreement is ineffective:

You are authorized to utilize these documents only upon the funding of the loan called for therein through payment of the amounts owing to First National Bank of Minneapolis related to the film "RED SCORPION", with the remainder of the net proceeds going to our client, Performance Guarantees, Inc.

*Intercontinental Monetary Corporation v. Performance Guarantees, Inc., et al.,* No. 88 Civ. 4462, Hearing, December 12, 1988, Plaintiff's Exhibit 2. It is PGI's position that this letter conditioned the effectiveness of the loan agreement on the disbursement of the loan funds. The court's November 10 opinion supported this position, stating that "If PGI did in fact send the [loan] agreement under cover of the [Wennergren] letter, then [PGI's] alleged consent to jurisdiction is ineffective." November 10 opinion at 7. This holding is the focus of IMC's motion to reargue.

Before considering IMC's motion for reargument, the court must address a choice of law question raised by PGI for the first time in response to the motion. Without suggesting that a relevant conflict exists between California and New York law, PGI argues that California law would be controlling if such a conflict did exist.

In deciding a choice of law question, a federal court sitting in diversity is bound by the choice of law rules of the forum state. *Loebig v. Larucci*, 572 F.2d 81, 84 (2d Cir.1978), *citing Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). On issues of substantive law, New York courts employ the "paramount interest" test which gives "controlling effect to the law of the jurisdiction which has the greatest concern with, or interest in, the specific issue raised in the litigation." *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 69, 286 N.E.2d 454, 457 (1972); *see also Intercontinental Planning v. Daystrom*, 24 N.Y.2d 372, 383, 300 N.Y.S.2d 817, 825, 248 N.E.2d 576, 581 (1969). "The task of the court is first to ascertain what the relevant legal issues are and then to determine, if more than one state is involved, which state's legitimate interests are most crucially implicated." *Hutner v. Greene*, 572 F.Supp. 49, 52 (S.D.N.Y.1983) (Carter, J.).

The issue presently before the court is whether PGI entered a binding agreement consenting to the jurisdiction of the Southern District of New York for purposes of adjudicating disputes arising out of the loan transaction which PGI and IMC commenced but never completed. The interest of both New York and California in the determination of this issue can be characterized partly as a concern to protect the legitimate personal and economic interests of their citizens and partly as an interest in regulating the formation of contracts within their boundaries. In the circumstances of this case, these interests are evenly weighted between the two states. Each is represented in the litigation by one of the parties, and the communications by means of which PGI either did or did not consent to this court's jurisdiction occurred between the two states. Based on these facts, neither state can claim a greater interest than the other in determining whether the jurisdictional agreement at issue was concluded.

Since the interests of California and New York are evenly divided on the specific question of contract formation which is presently at issue,[1] the court will decide the question on the basis of New York law. Both parties have argued their positions on the basis of New York rather than California law, and no claim of conflict has been made.

IMC argues that the effect of the Wennergren letter had not been properly briefed to the court, because the existence of the letter was mentioned for the first time in a PGI reply brief to which IMC had no opportunity to respond. With regard to the substantive point at issue, IMC argues that the Wennergren letter could not condition PGI's consent to jurisdiction. While a number of grounds are cited in support of this claim, the essence of IMC's argument is that the doctrine of conditional delivery, upon which the court relied in its holding, is inapplicable to the circumstances at issue here, and that even if it does apply, the parol evidence rule bars proof of the condition precedent which PGI seeks to establish.

IMC takes the position that the doctrine of conditional delivery applies only to "formal contracts,"[2] and is therefore inapplicable to the loan agreement. The only authority cited by IMC in support of this proposition, however, is a bankruptcy court decision, *In re Roman Crest Fruit, Inc.*, 35 B.R. 939 (Bankr.S.D.N.Y.1983), which

---

**1.** PGI argues that California's interest is greater because its contacts with the overall loan transaction are more substantial than New York's. This may be true, but it misses the point of New York's choice of law rule. It is the relative interest of the two jurisdictions in the specific legal point at issue in a case, not the overall interest of the two jurisdictions in the subject matter of the suit, that is controlling. *See William J. Conlon & Sons, Inc. v. Wanamaker*, 583

F.Supp. 212 (E.D.N.Y.1984) (New York law controlling on statute of frauds question even though Pennsylvania had more significant contacts with the contract at issue).

**2.** "Formal contracts" include contracts under seal, recognizances, negotiable instruments and documents, and letters of credit. *See* Restatement (Second) of Contracts § 6 (1981).

appears to have ignored controlling New York precedent.[3]

In *Roman Crest* a contract providing for the assignment of a leasehold was fully executed by both parties on the understanding that it would be submitted to the seller's attorney for his approval and that "if his approval doesn't come through there is no deal." *Id.* at 942. When the seller told his attorney that he was seeking a fraudulent under-the-table payment from the buyer in connection with the sale, the attorney refused to have anything further to do with the transaction and returned the executed contract to the buyer's attorney with both a handwritten cover note stating that his failure to approve was the result of a disagreement between him and the seller and a cover letter purporting to prohibit use of the documents.

The court held that the formation of the contract was validly conditioned upon the approval of the seller's attorney, but that "the condition is deemed to have been satisfied and the contract formed since it was [the seller's] breach of his implicit duty of good faith and fair dealing in the performance of this condition that caused [his] attorney to withhold his approval." *Id.* at 944.

The court then went on to consider the seller's contention that delivery of the contract without the approval of its terms by the seller's attorney was tantamount to no delivery, and that this failure of delivery invalidated the agreement. The court rejected this argument, holding that delivery is a requirement for the effectiveness only of formal contracts. *Id.* at 944.

It is this latter holding upon which IMC relies for its contention that the doctrine of conditional delivery applies only to formal contracts. In so holding, however, the *Roman Crest* court appears to have ignored the holding in *219 Broadway Corp. v. Al-exander's, Inc.*, 46 N.Y.2d 506, 414 N.Y.S.2d 889, 387 N.E.2d 1205 (1979), that:

A lease, as in the case of conveyances of an interest in land generally, requires the fulfillment by the parties of certain prerequisites to take effect. It is the well-established rule in this State that delivery is one such requirement, the absence of which, without more, renders the lease ineffective.

414 N.Y.S.2d at 891, 387 N.E.2d at 1207 (citations omitted).

This does not mean that there is a general rule in New York requiring the physical delivery of a written contract for it to be enforceable. *See id.* at 892–93, 387 N.E.2d at 1208 (court declines to "reach or consider the broad question whether, and in what circumstances, signature alone will suffice to create an enforceable contract"). *See also Bohlen Industries v. Flint Oil & Gas, Inc.*, 106 A.D.2d 909, 483 N.Y.S.2d 529, 530 (4th Dept.1984); *Armour & Company v. Celic*, 294 F.2d 432, 435 (2d Cir.1961). As Judge Conner has observed, however, "each time that the courts have agreed to enforce a contract which was never delivered, the decision was based upon a finding that the parties manifested no intent to establish delivery as a condition precedent to the contract's effectiveness." *Krofft Entertainment, Inc. v. CBS Songs*, 653 F.Supp. 1530 (S.D.N.Y.1987) (Conner, J.).

The general rule in New York, applicable to most written agreements, is that the intent of the parties determines whether they are enforceable immediately upon their execution or only upon delivery. *Birch v. McNall*, 19 A.D.2d 850, 244 N.Y.S.2d 60 (4th Dept.1963), citing *Sarasohn v. Kamaiky*, 193 N.Y. 203, 214, 86 N.E. 20 (1908), *rehearing denied* 194 N.Y. 535, 87 N.E. 1126 (1909), and *Dietz v. Farish*, 79 N.Y. 520, 525 (1880). In fact, it is in recog-

---

**3.** IMC also relies on the fact that the section of the Restatement of Contracts cited by the court in its November 10 opinion states a rule for contracts under seal and for written promises that are binding without consideration. *See* Restatement (Second) of Contracts §§ 103(2)–(3), 95 Comment d (1981). In a later section, however, a rule is stated for "unsealed writings" that is "similar in operation to the rules [stated in § 103] governing delivery of a sealed promise in escrow or its conditional delivery to the promisee." *Id.* § 217 Comment a.

nition of this principle that a *per se* delivery requirement has been recognized for some types of contracts. As the *219 Broadway Corp.* court explained:

> The underlying justification for viewing delivery as fundamental to the conveyance of an interest in land is not grounded in the blind application of what some may consider archaic principles of property law. On the contrary, delivery serves a very practical end. It is common practice in the contemporary business world for parties to draft and sign instruments of conveyance prior to the time at which they intend their contemplated transaction to become irrevocable. By requiring delivery, the law facilitates the true expectations of the parties by ensuring that the interest in the property is not conveyed until that moment when the parties so intend.

414 N.Y.S.2d at 892, 387 N.E.2d at 1208.

Even where delivery is not absolutely required as a matter of law, there are situations where the absence of delivery may provide conclusive evidence that the process of contract formation is incomplete. Such may be the case, for example, where the parties to a written agreement sign the instrument out of the presence of each other and then withhold delivery of the signed document. *Manhattan Theatre v. Bohemian Ben. & Lit. Ass'n*, 120 Misc.2d 1094, 467 N.Y.S.2d 143, 146 (Sup.Ct.1983). The conditional delivery of an agreement signed by one party out of the presence of the other may also provide evidence of the intent of the signing party.

■ Thus, the doctrine of conditional delivery cannot be said to apply only to formal contracts.[4] It is relevant to a determination of the intent of the parties in forming any contract, even where physical delivery is not an absolute prerequisite for the formation of the contract.

■ This does not mean that any and all modifications in the terms of a written contract are provable by evidence of conditional delivery. It is well established that extrinsic evidence may not be used to prove an oral condition precedent which is inconsistent with the express terms of a written agreement. *Bank of Suffolk County v. Kite*, 49 N.Y.2d 827, 828, 427 N.Y.S.2d 782, 783, 404 N.E.2d 1323, 1324 (1980); *Hicks v. Bush*, 10 N.Y.2d 488, 491, 225 N.Y.S.2d 34, 36–37, 180 N.E.2d 425, 427 (1962).

This rule provides the basis for IMC's other major challenge to the court's holding in its November 10 opinion regarding the effect of the Wennergren letter. IMC claims that the condition precedent which PGI seeks to prove by means of the Wennergren letter is inconsistent with the terms of the loan agreement. Since the court failed to address this issue in its November 10 opinion, reconsideration of that question is appropriate, and IMC's motion for reargument is granted for that purpose.

■ The standard which New York courts apply in deciding whether extrinsic evidence of a condition precedent to the effectiveness of a written agreement is admissible is whether the condition contradicts the express terms of the agreement. As the court explained in *Hicks v. Bush*,

> "[a] certain disparity is inevitable, of course, whenever a written promise is, by oral agreement of the parties, made conditional upon an event not expressed in the writing. Quite obviously, though, the parol evidence rule does not bar proof of every orally established condition precedent, but only of those which in a real sense contradict the terms of the written agreement."

225 N.Y.S.2d at 37, 180 N.E.2d at 427. However, the line between consistent and

---

4. As the Supreme Court commented in *Hartford Fire Ins. Co. v. Wilson*, 187 U.S. 467, 23 S.Ct. 189, 47 L.Ed. 261 (1903), "If an instrument containing an absolute promise to pay may be conditionally delivered, it is difficult to perceive any good reason why an instrument containing a promise to pay upon a contingency may not likewise be conditionally delivered. If the fail- ure of the condition in the one case prevents the instrument from becoming definitely operative, why not in the other?" *Id.* at 474, 23 S.Ct. at 192. The issue in *Hartford Fire Ins. Co.* was whether the doctrine of conditional delivery applied to a fully executed insurance contract. The court held that it did.

inconsistent conditions precedent may be a fine one. *Compare Long Island Trust Co. v. Int'l Institute for Packaging Education, Ltd.,* 38 N.Y.2d 493, 381 N.Y.S.2d 445, 344 N.E.2d 377 (1976), and *Meadow Brook National Bank v. Bzura,* 20 A.D.2d 287, 246 N.Y.S.2d 787 (1st Dept.1964).

In this case, PGI must establish that the Wennergren letter rendered totally ineffective all of the obligations created under the loan agreement, pending the actual disbursal of the loan funds. If any of the representations, warranties, and duties specified in the loan agreement could not be reasonably conditioned on the closing of the loan, then PGI's attempt to prove by extrinsic evidence that the effectiveness of the loan agreement was subject to that condition precedent must be rejected. Only if the loan agreement was rendered totally ineffective by the Wennergren letter could PGI escape the choice of forum clause included in the agreement.

To regard the loan agreement as totally ineffective pending the closing of the loan is inconsistent with its express terms. Under the loan agreement, PGI made certain representations and warranties, and IMC agreed to lend PGI $8.25 million on specified terms, provided certain identified conditions were satisfied and certain identified documents were provided by PGI to IMC.

PGI's claim regarding the effect of the Wennergren letter would defeat the express intent of the agreement. If the loan agreement was not to become effective unless the loan closed, it could not be viewed as a promise to make a loan at all. This contradicts those terms of the loan agreement under which IMC incurred an obligation to make a loan to PGI if certain

conditions precedent were satisfied.[5] To accept PGI's claim would also require that its own representations and warranties be deemed ineffective prior to the closing of the loan. This cannot be reconciled with the unqualified inclusion of those representations and warranties in a bilateral agreement which includes an executory promise by the other party to make a loan, obviously in part because it has received those representations and warranties.

■ Since the condition precedent which PGI seeks to prove is inconsistent with the terms of the loan agreement, extrinsic evidence is inadmissible to prove the condition, and the court need not consider the circumstances surrounding PGI's transmittal of the loan agreement.[6] The consent to jurisdiction clause contained in the loan agreement is effective. Further study of the issue convinces the court that the holding in its November 10 opinion that the Wennergren letter, if sent with the loan agreement, rendered PGI's consent to jurisdiction ineffective was error and is now rejected.

This disposes of PGI's jurisdictional challenge to IMC's complaint, but PGI has also moved pursuant to 28 U.S.C. § 1404(a) ("section 1404(a)") that the case be transferred to the Central District of California.[7]

■ As the moving party, PGI has the burden of showing that such a transfer should be made. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). The factors to be considered in deciding the motion are the same as those which are relevant to a motion to dismiss based on the *forum non conve-*

---

5. It would not avail PGI to argue, in this context, that the loan agreement created performance obligations only for IMC prior to the closing of the loan. At this point in the litigation, the issue is not whether PGI had any duty under the loan agreement to complete the loan transaction, but whether the agreement took effect when it was executed, thereby activating the consent to jurisdiction clause which it contained. Except for the jurisdictional issue, the court is not deciding the nature or extent of the parties' obligations under the loan agreement at this time.

6. Since no analysis of these circumstances is necessary at this time, the court declines to decide whether the Wennergren letter had any effect on IMC's right to use the other documents which were transmitted by PGI along with the loan agreement.

7. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

*niens* doctrine, but the court's discretion under section 1404(a) is broader, and a transfer may be granted upon a lesser showing of inconvenience than for a *forum non conveniens* dismissal. *Norwood v. Kirkpatrick*, 349 U.S. 29, 31–32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955).

A wide variety of factors are relevant to such a determination, including plaintiff's choice of forum, the relative congestion of court calendars, the court's familiarity with applicable state law, the availability and convenience of witnesses and other sources of proof, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). All relevant factors are to be considered, and none are dispositive standing alone. 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3847 at 370 n. 7 (1986).

■ Plaintiff's choice of forum is entitled to "substantial consideration." [8] If defendant has additionally consented to jurisdiction in a particular forum, then these two factors combined weigh very heavily against a transfer order. Even an express agreement between the parties to have a case litigated in a particular forum is not dispositive, however, if other factors weigh heavily in favor of a transfer. *Plum Tree v. Stockment*, 488 F.2d 754, 757–58 (3d Cir.1973); *Essex Crane Rental v. Vic*

*Kirsch Const.*, 486 F.Supp. 529 (S.D.N.Y. 1980) (Haight, J.); *Commercial Solvents Corp. v. Liberty Mut. Ins. Co.*, 371 F.Supp. 247, 251 (S.D.N.Y.1974) (Stewart, J.). Still, to overcome the weight of plaintiff's choice of forum and defendant's consent to jurisdiction, unusually strong considerations of witness availability would have to exist favoring a transfer. For example, in *Capitol Cabinet Corp. v. Interior Dynamics*, 541 F.Supp. 588 (S.D.N.Y.1982) (Edelstein, J.), the court ordered a transfer even though balance of convenience did not favor it, where testimony of an essential witness could not be compelled otherwise.

■ In this case, considerations of witness availability weigh slightly in favor of a transfer,[9] but not strongly enough to overcome the plaintiff's choice of forum, combined with the defendant's consent to jurisdiction. Although there are more third party witnesses located in the Los Angeles area than in the New York area, it does not appear that there are any key third party witnesses whose testimony could be obtained only in Los Angeles.[10]

In addition to the convenience of third party witnesses, PGI cites the fact that a related case is pending in the California courts. This case was filed by PGI against IMC after IMC filed the instant action. It should not control the court's selection of a proper forum to hear this case. Otherwise, encouragement would be provided for the

---

**8.** Although *Gulf Oil* is commonly cited for the proposition that great weight should be accorded plaintiff's choice of forum, *see e.g. Gonzalez v. St. Margaret's House Housing Dev. Fund*, 668 F.Supp. 187 (S.D.N.Y.1987) (Connor, J.), it must be remembered that the *Gulf Oil* Court was discussing the *forum non conveniens* doctrine, not section 1404(a). In *Norwood*, the Court made it clear that transfers under section 1404(a) require less of a showing. The Second Circuit has noted the distinction in commenting that "the plaintiff's choice of venue is still entitled to substantial consideration, although not so much upon a motion to transfer under 28 U.S.C. § 1404(a) as upon a motion to dismiss for *forum non conveniens*. *A. Olinick & Sons v. Dempster Brothers, Inc.*, 365 F.2d 439 (2d Cir. 1966).

**9.** In addition to one of its attorneys, PGI identifies at least three third party witnesses located in California whose testimony it regards as im-

portant. They are the middleman who brought IMC and PGI together, an escrow officer at Wells Fargo Bank, and one or more loan officers at National Westminster Bank who are located in California. In addition to one of its attorneys, IMC identifies one third party witness who is located in the New York metropolitan area whose testimony it regards as important, a representative of the Connecticut bank that provided IMC a line of credit for the loan. IMC further urges that it would be more convenient for its British solicitors to testify in New York.

**10.** IMC's attorney states in her affidavit that the middleman who brought IMC and PGI together would make himself available to testify in New York. He probably would, since his interest is allied with that of IMC in this matter, and he submitted an affidavit in opposition to PGI's motion to have the court either decline jurisdiction or transfer the case to California.

**152**

filing of actions in state court as a tactical weapon to support section 1404(a) motions.

Taken together, the factors cited by PGI in support of its motion to transfer provide little support for the motion. The case will not be transferred.

CONCLUSION

The court's prior holding regarding the effect of the Wennergren letter has been reconsidered and has been determined to have been in error. Defendant's motion to dismiss for lack of personal jurisdiction is denied. Defendant's motion for a transfer of the case pursuant to 28 U.S.C. § 1404(a) is also denied. Finally, because plaintiff's motion for reargument has been found meritorious, defendant's cross motion for sanctions is also denied.

IT IS SO ORDERED.