**James R. HIGHFIELD,
Plaintiff-Appellant,**

v.

**Patricia LANG, Defendant-Appellee.**

**No. 3-877A206.**

Court of Appeals of Indiana,
Third District.

Sept. 10, 1979.

---

Philip R. Skodinski, South Bend, for plaintiff-appellant.

John J. Roper, South Bend, for defendant-appellee.

GARRARD, Presiding Judge.

Appellant Highfield was employed by Orbit Postal Systems, Inc. (OPS) from January to March, 1972 as market manager and a trainer and manager of sales personnel. He was paid on a commission basis and received eight or nine commission checks from OPS. The last three checks were dishonored for insufficient funds, and Highfield brought this action seeking to enforce personal liability against appellee Lang, one of two signators on each of the checks.[1] The trial court, after hearing the evidence, found for the defendant Lang.

Highfield first contends that Lang was personally liable on the checks under the Uniform Commercial Code because she signed them without designating her representative capacity. IC 26–1–3–403 provides in pertinent part,

"(2) An authorized representative who signs his own name to an instrument

(a) Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

---

1. Default judgment was earlier secured against Claude Cade, president of OPS. The other signatures appearing on the checks at suit were those of Cade or Sherrie Railsback, the bookkeeper for OPS.

(b) Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity."

On each of the checks in question the name and address of the corporation appear in the upper left hand quarter. The signature block in the lower right hand quarter contains two printed lines for signatures. The corporate name is not again preprinted nor is there any preprinted designation of capacity for those who may sign the checks. The checks were completed with the signatures of Lang and the co-signer without any designation of their capacities.

■ This form was sufficient to meet the requirement of IC 26–1–3–403(2)(a) to name the person [corporation] represented. However, pursuant to subsection (2)(b) Lang is nevertheless personally liable because the instrument does not disclose that she signed in a representative capacity, unless the evidence established that between the immediate parties this was not intended. Parol evidence is admissible to disclose any such understanding between the immediate parties. Indiana Comment, IC 26–1–3–403; see American Exchange Bank v. Cessna (N.D.Okl.1974), 386 F.Supp. 494.

The evidence favoring the judgment established that Highfield was hired by Cade, whom he had previously known. He served as market manager for the corporation. He knew that OPS was incorporated, and that he was working for the corporation. He knew that the corporate checks bore two signatures and were signed in some combination by Cade, Lang and Railsback. He knew that Lang was a vice-president of OPS and that Railsback was the bookkeep-

er. He also knew that Lang mapped routes for carriers, made out cards with street numbers, and would manage the office when Cade was gone.

■ Although the evidence was conflicting, the court could reasonably have concluded that Highfield knew he was working for and was to be paid by the corporation; that he knew all the various signers of the checks were authorized corporate representatives; and that no personal liability on their part was intended.[2]

Highfield's alternative argument seeks to impose personal liability on Lang for a corporate tort in issuing the checks which were dishonored. Again we find no error. The evidence was not without conflict and leading to only one conclusion opposite that reached by the court.

Highfield admitted during trial that Lang did not personally misrepresent to him the condition of the corporation. Lang testified that she did not know there were not sufficient funds and that the checks would be dishonored. She testified that on an occasion during the previous year when she had been concerned about the corporation's financial status she had made inquiry and had been told by Cade to take care of her job and he would take care of his.

■ Moreover, we may not impute to her this knowledge by virtue of her status as a vice-president. That office and its duties are not specifically covered by the corporation statutes. See IC 23–1–2–13. Since no corporate articles or by-laws were introduced and no testimony was elicited as to her duties as vice-president, we cannot say the court erred in concluding Highfield failed to establish that she was chargeable with knowledge of the status of the corporate account.

Affirmed.

HOFFMAN and STATON, JJ., concur.

---

**2.** Highfield, referring to a communication from the trial judge made outside the record, attempts to argue that the court failed to impose upon the representative the burden of establishing the understanding. The trial court did not enter special findings and was not requested to do so. The court speaks only through its order book. *Epps v. State* (1963), 244 Ind. 515, 192 N.E.2d 459; *but see In re Marriage of Myers* (1979), Ind.App., 387 N.E.2d 1360. Since the court's general finding is supported by the evidence, we decline to address the substance of this argument.