MR. JUSTICE MORRISON,
dissenting:
It seems to me the majority opinion incorrectly decides all of the jury issues in this case.
The jury in this case was submitted special interrogatories with respect to various damage issues presented by way of counter-claim on the part of defendants. Plaintiffs foreclosure issues were reserved by the parties for decision through bench determination.
Assuming arguendo that the District Court erred in instructing the jury on the breach of contract action, then that special interrogatory *45 to the jury should be set aside. However, such a finding does not infiltrate the tort case. Compensatory damages and punitive damages awarded by the jury should be affirmed and entry of judgment directed on those amounts totaling $980,000.
In any event, the majority incorrectly decides the breach of contract issue and that too should be affirmed. The crux of majority’s position relies upon an assumption that the bank officials could create a breach of contract issue by testifying the loan was for specific purposes. These purposes were from parol evidence in the form of scratch pad notations and verbal testimony. This evidence should have been excluded from the jury as it violated the parol evidence rule.
Section 28-2-904, MCA, provides as follows:
“Effective written contract on oral agreements. The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.”
The note and mortgage here at issue appear to be facially clear. The only exceptions, under these circumstances, to the parol evidence rule are stated in Sec. 28-2-905(1), MCA which provides:
“When extrinsic evidence concerning a written agreement may be considered.
“(1) Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms. Therefore, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing except in the following cases:
“(a) when a mistake or imperfection of the writing is put in issue by the pleadings;
“(b) when the validity of the agreement is the fact in dispute.”
Neither of the two conditions set forth in Section 28-2-905(1), MCA, is present in this case. Even if there were an ambiguity in the instruments, the Bank, having drafted the same, could not raise the ambiguity to allow for the introduction of parol evidence. Section 28-3-206, MCA, provides:
“Uncertainty to be resolved against party causing it. In cases of uncertainty not removed by parts 1 through 5 of this chapter, language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promissor is pre *46 sumed to be such party, except that in the case of a contract between a public officer or body, as such, and a private party, it is presumed that all uncertainty was caused by the private party.”
Furthermore, the intention of the parties with respect to the note and mortgage must be ascertained only from the instruments themselves unless such intention is impossible to ascertain by reference to the agreements. Section 28-3-303, MCA. The majority opinion reverses court’s Instruction No. 1 by simply stating that there was a conflict in the evidence. There was in fact no conflict. Although plaintiff did not object to introduction of the parol evidence the trial court was perfectly justified, after hearing all evidence, to rule that such evidence could create no fact issue on the contract obligation to pay the $84,291.69.
The majority seems to feel the note and security agreement are not a complete contract and the parole evidence rule has no application. There is abundant authority that the parol evidence rule applies to negotiable instruments. In Perez-Lizano v. Ayers (Mont. 1985), [215 Mont. 95,] 695 P.2d 467, 42 St.Rep. 208, a similar issue was before the court. Ayers contended on appeal that his note to Perez-Lizano was conditioned by oral agreement. This Court held such representations violated the parol evidence rule. Lest there be any doubt that the rule applies to notes, this Court said:
“Section 28-2-905, MCA, provides that when the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all the terms, and there can be no evidence of the terms of the agreement other than the contents of the writing except when a mistake or an imperfection of the writing, is at issue, or when the validity of the agreement is the fact in dispute.
“Summary judgment in this case was proper. Ayers’ assertion that there is a material question of fact about the fraudulent purpose of the contract is immaterial because even if his assertions are true, the extrinsic evidence would be inadmissible under the parol evidence rule.”
Numerous cases hold that a negotiable instrument which is clear on its face cannot be altered by parol agreements or representations. See Evenson v. Hlebechuk (N.D. 1981), 305 N.W. 2d 13; Daniell Motor Co. Inc. v. Northwest Bank (Tex.App. 1986), 713 S.W.2d 808.
Instruction No. 1, given by the trial court, was proper because the instruments at issue were clear on their face. Upon demand by defendants, the Bank had an affirmative duty to pay that which they *47 were obligated to pay. When the Bank refused, it breached its contract to defendants.
The balance of the majority’s position with respect to the jury verdict appears to be a cumulation of after-thoughts which would not have required reversal of the damage portion of the case. However, the majority is wrong on all counts.
The instruction on intentional interference is a correct one. The record supports separate damages for breach of contract and for tort. There is no indication that these damages duplicate or overlap. There is no legal requirement for the jury to be instructed that punitive damages relate to the contract or tort portion of the case. They were properly instructed that punitive damages are awarded for oppression, fraud or malice. Having found compensatory damages in tort, the jury was entitled to award punitive damages. The majority simply fails to adequately address or understand the issues in this case.
Next, the majority addresses whether the court erred in entering a judgment for defendants denying the Bank a deficiency judgment. The majority finds fault with the trial court’s determination that liquidation was not commercially reasonable by boldly stating there was nothing in the record to justify such a finding and that, in any event, it contradicts the special finding of the jury.
Obviously the jury was entitled to choose from alternative theories and chose fraud instead of other theories given to them. This is perfectly permissible and is so well established a citation of authority is unnecessary.
Foreclosure issues were, by stipulation, reserved for the court. The court specifically found that the method of liquidation was commercially unreasonable. This fact was properly decided by the court in its portion of the case.
The trial court found that Weaver-Maxwell, was not in default on the loans at issue on April 7, 1980. Only after the Bank’s tortious conduct caused Weaver-Maxwell to lose its franchises did the Bank seize upon these same losses to deem itself insecure. Consequently, in the foreclosure action, the court found the Bank’s reason for accelerating the loans to be commercially unreasonable. Abundant evidence in the record supported this finding.
Even if there had been a default on the part of Weaver-Maxwell, the trial court was justified in finding that liquidation was not commercially reasonable. As a part of its burden, the secured party must establish that it realized the full value of its collateral by means of a *48 commercially reasonable disposition. Hubbard v. Farmers Bank Union Point (1980), 155 Ga.App. 720, 272 S.E.2d 510, aff’d 247 Ga. 431, 276 S.E.2d 622 (1980). To do this, the secured party must prove the value of the collateral at the time of repossession as well as a reasonable method of sale. Wood v. First National Bank of Commerce (1983), 167 Ga.App. 202, 305 S.E.2d 852. When a secured party fails to prove the value of the collateral liquidated, the law presumes the value of the collateral equaled the value of the underlying debt plus all expenses. Savoy v. Beneficial Consumer Discount Co., (1983), 503 Pa. 74, 468 A.2d 465; Lincoln First Bank v. Salvaterra (1980), 431 N.Y.S.2d 302, 106 Misc.2d 51, aff’d 437 N.Y.S.2d 611, 108 Misc.2d 453 (1980); First National Bank of Denver v. Cillessen (Col.App. 1980), 622 P.2d 598.
The issue of “commercially reasonable” was for the trial court. In the absence of evidence proving that liquidation was commercially reasonable the Bank should suffer by not being permitted a deficiency judgment.
At the time it took possession of Weaver-Maxwell’s assets, the Bank took no inventory of what it received. Nor did the Bank make any appraisals of the most valuable equipment or inventory. The Bank did not even keep a meaningful list of what it sold.
Based upon the evidence before it the trial court found:
“The Bank’s failure to maintain an inventory of what was sold or to make any appraisals of the more valuable pieces of collateral precludes this court from determining . . . the amount of any value lost as a result of the Bank’s negligence.”
Finding of Fact No. 15.
At the time of trial the Bank had collected $729,000 in liquidation proceeds against a total debt of $726,000. Actually the Bank owes defendants $3,000. All of the essential facts and applicable law are omitted in the majority’s discussion.
In my opinion the trial court did err in canceling the indebtedness and ordering return of the liquidation proceeds to defendants. This action by the court goes beyond the equitable remedies available to the judge here and may well duplicate the damages awarded by the jury. I also disagree with the trial court’s determination allowing interest because the amount was not liquidated. Attorneys’ fees are allowable on the contract action but not the tort action and in this respect I agree with the majority opinion.
The banking industry in Montana has complained to everyone within ear shot about obligations imposed upon the banks by this *49 Court. At least in theory we have created obligations designed to assure bank customers fair treatment when they deal with the banking industry in this state.
The facts of this case illustrate the kind of banking practices which Court-imposed obligations were designed to correct. Weavers wished to borrow $84,291.69. The Bank wanted more security on the Weaver-Maxwell corporate debt. The Bank agreed to lend Weavers the money but demanded that Art Weaver personally collateralize the loan with a substantial portion of his family’s personal assets. The Bank did not inform the Weavers that the Bank had arranged for the security on this personal note to cross-collateralize the debt of Weaver-Maxwell, Inc. After obtaining the additional security on the corporate debt, the Bank breached its contract to Weavers and failed to advance the $84,291. Instead the Bank foreclosed and liquidated the security.
There are many fine bankers and banking institutions in the State of Montana. I can personally attest to that from having done business with them. However, the kind of practice which was engaged by the Norwest Bank of Great Falls in this case should not be countenanced. It is exactly the kind of business practice which the new legal duties seek to stop.
This case represents a blatant attempt by the majority of this Court to bail the Bank out where the Bank has caused serious and irreparable damage to a Montana business and its owners. This kind of banking practice creates an unfavorable business climate in Montana and should not be shielded by the majority’s result orientated judicial fiats.
There is no error in the jury trial and judgment should be entered on the jury verdict. The judgment entered by the trial court on the equity issues should be amended to reflect the views herein expressed.
MR. JUSTICES SHEEHY and HUNT concur.