**HERZOG CONTRACTING CORPORATION, Plaintiff–Appellee,**

v.

**McGOWEN CORPORATION, Defendant–Appellant.**

No. 91–2896.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1992.

Decided Oct. 1, 1992.

John C. Trimble, Lewis, Bowman, St. Clair & Wagner, Indianapolis, Ind. and Jeffrey B. Davison (argued), and Steven L.

Stevenson, Liles, Davison, Stevenson & Davis, St. Joseph, Mo., for plaintiff-appellee.

Cheryl M. Knodle, Michael J. Stapleton (argued) and Warren N. Eggleston, Ball, Eggleston, Bumbleburg & McBride, Lafayette, Ind., for defendant-appellant.

Before POSNER and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

POSNER, Circuit Judge.

The district judge granted summary judgment in favor of Herzog Contracting Corporation in its diversity suit to enforce two promissory notes, aggregating $400,000, against the issuer, McGowen Corporation. The appeal raises a tangle of jurisdictional and substantive questions, the latter governed, the parties agree, by Indiana law.

■■■ The district court's original judgment order (see Fed.R.Civ.P. 58), entered on June 28 of last year, merely stated that the plaintiff's motion for summary judgment was granted. It did not mention a sum of money. The plaintiff filed a motion under Rule 59(e) to amend the judgment by stating the dollar amount to which it was entitled. The judge granted the motion and entered an amended judgment on July 26 awarding Herzog $400,000 plus almost $70,000 in prejudgment interest, but he designated the new judgment order a "nunc pro tunc" (now for then) order. The defendant filed its notice of appeal on August 7, which was within thirty days of the amended judgment but not of the original one.

The plaintiff argues that the order of July 26 did not really amend the judgment, but in effect merely corrected a clerical error—the omission of a dollar amount from the original judgment—and that this is shown by the judge's action in making the "amendment" or correction retroactive to the date of the original judgment; for what else could his intention have been in designating the order "nunc pro tunc"? *King v. Ionization International, Inc.,* 825 F.2d 1180, 1188 (7th Cir.1987). The

defendant responds that the original judgment was not a final judgment, precisely because it omitted the dollar amount of the plaintiff's entitlement—to which the plaintiff ripostes that in a suit to enforce a promissory note the plaintiff's damages are mechanically computable from the face of the note, and a judgment is not nonfinal merely because a mechanical computation is required to determine the exact relief to which the plaintiff is entitled. *United States v. F. & M. Schaefer Brewing Co.,* 356 U.S. 227, 233–34, 78 S.Ct. 674, 678–79, 2 L.Ed.2d 721 (1958); *Mauriello v. University of Medicine and Dentistry,* 781 F.2d 46, 49 (3d Cir.1986); *Ram v. Paramount Film Distributing Corp.,* 278 F.2d 191, 193–94 (4th Cir.1960) (per curiam).

We think the original judgment was final, because the process of reducing it to a sum certain was indeed mechanical. This is true even though the promissory notes provided for interest at the rate of 11.5 percent per annum plus "costs of collection, including reasonable attorney's fees." *Id.; G. & T. Terminal Packaging Co. v. Hawman,* 870 F.2d 77, 80 (2d Cir.1989) (dictum). The amount of interest was computable simply by multiplying the face amount of the notes by the interest rate for the period between when the notes matured and when the judgment was entered. It is true that prejudgment interest is part of the judgment, not collateral to it, like attorneys' fees. *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). But all that that means, so far as bears on this case, is that if the judge had not awarded prejudgment interest, Herzog would have had to file a Rule 59(e) motion in order to get him to do so. *Id.* The omission of prejudgment interest would not have detracted from the finality of the original judgment; it just would have made it erroneous. As a matter of fact there was no omission; the best reading of the original judgment is that it gave Herzog judgment on the notes, which included prejudgment interest at the rate specified in them. However that may be, the original judgment would not have been final only if it had deferred determination of Herzog's entitlement to prejudgment in-

terest, and it did not; it gave Herzog judgment for the value of the notes, which included the interest.

As for the "costs of collection, including reasonable attorney's fees," attorneys' fees we know are a collateral item, *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199–203, 108 S.Ct. 1717, 1720–22, 100 L.Ed.2d 178 (1988), and they were the only collection costs for which Herzog seeks reimbursement. In any event, the major costs incurred in collecting a promissory note are attorneys' fees, and the other costs are also legal expenses of a kind to which a plaintiff is entitled in a collateral proceeding when a statute or contract entitles him to recover the expenses of suit if he prevails. We have held that "attorney's fees" as it appears in statutes is shorthand for "attorney's fees plus all other reasonable expenses of suit," *Heiar v. Crawford County*, 746 F.2d 1190, 1203–04 (7th Cir. 1984); *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir.1984), and have reached the same conclusion when the entitlement was contractual rather than statutory. *Id.* at 191–92.

■ So the original judgment was final. But provided the plaintiff's motion to amend it was a valid invocation of Rule 59(e)—and we think it was—it stopped the appeal clock. Fed.R.App.P. 4(a)(4). The motion was not merely one to correct a clerical error, in which event it would not be a motion to alter or amend the judgment within the meaning of Rule 59(e); clerical errors are corrected by motion under Rule 60(a). *United States v. Griffin*, 782 F.2d 1393, 1396 (7th Cir.1986). There was no error, clerical or otherwise, in the original judgment. It just lacked explicitness. Although the monetary implications of the judgment could indeed be read off from the face of the complaint, the plaintiff may have feared that the defendant would interpose some objection if the plaintiff tried to collect on a judgment that did not specify an amount due.

■ Our cases say that a postjudgment motion is a motion under Rule 59(e), regardless of its caption, if it is filed within ten days (as this one was) and is "substan-

tive." *Lac du Flambeau Band v. Wisconsin*, 957 F.2d 515, 517 (7th Cir.1992); *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986). Or, alternatively, if it is not "purely procedural." *Lorenzen v. Employees Retirement Plan*, 896 F.2d 228, 231 (7th Cir.1990). Debatable cases are to be shoveled into the substantive bin in order to avoid the "endless hassles over proper characterization" that would ensue if appellees thought they had a good shot at defeating an appeal by pointing to ambiguities or irregularities in a postjudgment motion that the appellant had thought postponed the deadline for his appeal—indeed postponed the earliest time at which he *could* appeal. *Western Industries, Inc. v. Newcor Canada, Ltd.*, 709 F.2d 16, 17 (7th Cir.1983) (per curiam).

■ A motion to make a judgment more explicit and therefore clearer is not "substantive" in the usual sense of the word, but we must have regard for the context in which the term is used in relation to postjudgment motions. (Recall the special meanings that "substantive" and "procedural" bear in other parts of law, for example in the application of the *Erie* doctrine.) A party ought not be able to postpone the deadline for taking an appeal by filing a motion that doesn't actually ask for a change in the judgment. The classic example is a motion for an extension of time within which to file a motion to amend the judgment. *Western Transportation Co. v. E.I. Du Pont de Nemours & Co.*, 682 F.2d 1233, 1236 (7th Cir.1982). It was to distinguish such cases that *Charles v. Daley* introduced the notion of a "substantive" Rule 59(e) motion. The motion in this case, filed as it was by a prevailing plaintiff, can hardly be thought a frivolous effort to postpone the time at which the judgment became final. It was a bona fide effort to alter the judgment, albeit not to change the amount of relief that the judgment provided. We think it fell on the "substantive" side of the line drawn in *Charles*, and therefore tolled the time for appeal. The judge's action in designating his amendment of the judgment "nunc pro tunc" could not alter the effect of a Rule 59(e)

motion in tolling the time for an appeal. Otherwise in any case in which such a motion was filed the district judge could destroy the losing party's right to appeal by sitting on the motion until the time to appeal from the original judgment had passed and then granting the motion "nunc pro tunc." Latin is a wonderful language but it is not properly used to destroy people's legal rights. *King v. Ionization International, Inc., supra,* 825 F.2d at 1188.

■ We may seem to have overlooked a more direct route to the conclusion that the appeal was timely: that by designating its motion as one under Rule 59(e) the plaintiff should be estopped to invoke the thirty-day limit on appeals. That would be fine if the time for taking an appeal were not jurisdictional, and could therefore be waived by the parties. But of course it is jurisdictional, *Browder v. Director,* 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978), and therefore it cannot be waived or, what amounts to the same thing, forfeited by conduct giving rise to an estoppel. *Rennie v. Garrett,* 896 F.2d 1057, 1060 (7th Cir. 1990).

■ The next jurisdictional issue requires us to delve into the facts. In 1989 Herzog, the plaintiff, bought the assets of Tru–Flex Metal Hose Corporation from McGowen, the defendant, and formed a wholly owned subsidiary of Herzog (also called Tru–Flex) to hold them, to which Herzog assigned the asset purchase agreement. The agreement called for annual payments from Tru–Flex to McGowen of $500,000 for five years. The two promissory notes, both demand notes, were issued by McGowen to Tru–Flex later in 1989. The parties have radically different positions on the purpose of the notes. Herzog claims that it loaned McGowen $400,000 and the notes are McGowen's promises to repay the loan. McGowen acknowledges having received the $400,000 but denies that it was a loan, contending instead that it was partial prepayment of the next year's installment due under the asset purchase agreement and that the only purpose of the notes that it gave Tru–Flex was to enable it (that is, McGowen) to postpone

the realization of taxable income to the following year by making the $400,000 payment look like a loan.

The parties soon fell to squabbling and Herzog refused to make further payments under the asset purchase agreement, precipitating a suit by McGowen against Herzog in an Indiana state court for breach of contract that remains pending. At about the same time that the state court suit was brought, Tru–Flex assigned McGowen's promissory notes to Herzog, which shortly afterward brought this suit to enforce them. McGowen argues that Herzog caused the assignment to be made in order to create diversity jurisdiction, since Tru–Flex and McGowen are both Indiana corporations but Herzog is a Missouri corporation. McGowen argues that Herzog's invocation of diversity jurisdiction following the assignment was therefore collusive, and hence that the suit should have been dismissed pursuant to 28 U.S.C. § 1359, which provides that "a district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Herzog submitted affidavits attesting that the purpose of the assignment was not to create diversity jurisdiction but to facilitate the provision of additional capital to Tru–Flex, which needed it in its operations. The consideration for the assignment was that Herzog, the assignee, would make credit available to its subsidiary, Tru–Flex, the assignor.

McGowen submitted no counter affidavits but argues that in light of the timing of the assignment and other suspicious circumstances Herzog's affidavits did not rebut the presumption that an assignment by a wholly owned subsidiary to its parent (or vice versa) that enables a diversity suit to be brought is collusive. We do not agree. The question whether an assignment is collusive, in the relevant sense of being motivated by the assignor's desire to obtain access to a federal court under the diversity jurisdiction, *Hartford Accident & Indemnity Co. v. Sullivan,* 846 F.2d 377, 382 (7th Cir.1988), is one of fact. Our review is

therefore deferential. *Grassi v. Ciba–Geigy, Ltd.,* 894 F.2d 181, 186 (5th Cir.1990). No doubt the relation between the parties to the assignment of McGowen's notes, and the timing of the assignment in relation to the parties' dispute and to this lawsuit, emit an odor of collusion, but the judge certainly was not required—perhaps was not permitted—to disregard the sworn evidence to the contrary submitted by Herzog and not countered by any evidence submitted by McGowen. The demand notes were assets, but of dubious utility to Tru–Flex since it was obvious that they could be collected only by means of a lawsuit. They had some value, though, and therefore some utility as consideration for the capital that Tru–Flex needed. Tru–Flex might have discounted them to a nonresident financial institution, with the incidental consequence of creating diversity jurisdiction over a suit to collect the notes, and it was not forbidden to engage in a similar transaction with its parent. Common ownership of corporations is designed in part to bring transactions within the affiliated group that would otherwise have been made with unrelated firms, cf. R.H. Coase, "The Nature of the Firm," 4 *Economica* (n.s.) 386 (1937), so no inference of collusive invocation of jurisdiction can be drawn from the simple fact that assignor and assignee are under common ownership. Congress could if it wanted adopt a rule forbidding the conferral of diversity jurisdiction by assignment to an affiliated corporation but it has not done so and we are given no urgent reason to try to do so in its place even to the extent of creating a soft rule, that is, a presumption.

We come to the merits. The case was decided on summary judgment and there has been no determination of the truth of McGowen's claim that the promissory notes were never intended to be presented for payment. So we must assume that the claim is true. The question is whether, as the district judge held, solely on the basis that the notes are "clear and unambiguous," they are enforceable regardless of what the parties actually intended.

They would be if enforcement were being sought by a holder in due course, UCC § 3–305, Ind.Code § 26–1–3–305, but Herzog concedes that it is not that. It places its case on the parol evidence rule. The promissory notes are unambiguous—they promise Herzog a specified sum of money on demand—and their terms cannot be varied by extrinsic evidence. At first glance Herzog's argument seems a complete nonstarter. A holder of a promissory note who is not a holder in due course takes the note subject to "all defenses of any party which would be available in an action on a simple contract," UCC § 3–306(b), Ind.Code § 26–1–3–306(b), and one of those defenses, notwithstanding the parol evidence rule, is that the parties did not intend to create an enforceable contract. 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 7.4, at p. 212 (1990); James J. White & Robert S. Summers, *Handbook of the Law under the Uniform Commercial Code* § 2–10, at p. 78 (1980). "It is well settled that whatever the formal documentary evidence, the parties to a legal transaction may always show that they understood a purported contract not to bind them; it may, for example, be a joke, or a disguise to deceive others." *In re H. Hicks & Son, Inc.,* 82 F.2d 277, 279 (2d Cir.1936) (L. Hand, J.); see also *Nice Ball Bearing Co. v. Bearing Jobbers, Inc.,* 205 F.2d 841, 845 (7th Cir.1953). The deceived others may, of course, be able to object to the attempt to prove the contract a sham, as in *Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Service, Inc.,* 870 F.2d 1148 (7th Cir.1989) (en banc), and *FDIC v. O'Neil,* 809 F.2d 350 (7th Cir.1987), but that is not a factor here. More to the point, a minority of jurisdictions "have refused to admit such evidence [i.e., that the purported contract was a joke, a disguise, in short a sham of some sort] where the purpose of the sham agreement was offensive to public policy." 2 Farnsworth, *supra,* § 7.4, at p. 212 n. 4; see Annot., "Admissibility of Oral Evidence to Show That a Writing Was a Sham Agreement Not Intended to Create Legal Relations," 71 *A.L.R.2d* 382, 393–97 (1960); 67 *A.L.R.2d Later Case Service* 555 (1984),

and for an illustrative case *Kergil v. Central Oregon Fir Supply Co.*, 213 Or. 186, 323 P.2d 947 (1958).

However, we prefer the majority rule, illustrated by our decision in *Nice Ball Bearing Co. v. Bearing Jobbers, Inc.*, *supra*, so will apply it here in default of any Indiana cases on the question. Apart from the fact that the minority rule rewards a party to the sham agreement and imposes a punishment that may be disproportionate to the promisor's misconduct, it invites a collateral inquiry into the character of the alleged "sham." Here the party accused of shamming by his fellow shammer was angling for a tax advantage. Did that make the transaction a "sham"? Despite the doctrine of tax law that substance prevails over form, *Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935); *Yosha v. Commissioner*, 861 F.2d 494 (7th Cir.1988), many transactions that would strike a nonspecialist as contrived purely to avoid taxes are entirely lawful. Must we therefore, to resolve this case, decide whether McGowen's effort to postpone its tax liability for the sale of Tru–Flex was one of them? We trust not.

But we are not done. In the face of the principle that any defenses to a contract are available in a suit on a promissory note unless the plaintiff is a holder in due course, some courts enforce the parol evidence rule more broadly in such suits than in suits to enforce ordinary contracts. Annot., "Admissibility of Parol Evidence to Show That a Bill or Note Was Conditional, or Given for a Special Purpose," 54 *A.L.R.* 702, 717–18 (1928). In *Perez–Lizano v. Ayers*, 215 Mont. 95, 695 P.2d 467, 469 (1985), for example, the court refused to allow the admission of parol evidence to show that the note was a sham. One of the cases in this line is an Indiana case, *Highfield v. Lang*, 182 Ind.App. 77, 394 N.E.2d 204, 206 (1979). But it is readily distinguishable from our case; and we have found two recent cases from other jurisdictions in which courts admitted parol evidence to show that a promissory note was not intended to be enforceable. *American Underwriting Corp. v. Rhode Island Hospital Trust Co.*, 111 R.I. 415, 303 A.2d 121, 125 (1973); *Simpson v. Milne*, 677 P.2d 365, 368 (Colo.App.1983). The second was a case of a sham; the parol evidence was that the notes in suit "were executed as a fiction to satisfy plaintiff's wife, who was near death, and who strongly felt that [the defendant and his wife] still owed [the plaintiff and his wife] money from prior business transactions." *Id.*

 Despite these last two cases and despite UCC § 3–306(b), the parties have tacitly agreed that the applicability of the parol evidence rule to this case is governed not by general contract law but by a special doctrine that allows in parol evidence to show, against a plaintiff who is not a holder in due course, that the delivery of the negotiable instrument that he is suing to collect was "for a special purpose." *Brames v. Crates*, 399 N.E.2d 437, 441 (Ind.App.1980); UCC § 3–306(c); Ind. Code § 26–1–3–306(c). This approach is understandable though not inevitable. While section 3–306(b) subjects the promisee who is not a holder in due course to "all defenses" that the original promisor would have had, implicitly including the defense that the promise was not intended to create enforceable rights, section 3–306(c) deals with some of these defenses in greater detail. This could be taken to imply that the defense that no enforceable rights were intended to be created is to be analyzed in accordance with the "special purpose" doctrine that predates the Code, though a likelier inference is that the draftsmen wanted simply to make sure that no defense was overlooked.

However this may be, Herzog argues that the special-purpose doctrine is limited to allowing the promisor (McGowen here) to defend by showing that his obligation to make good on the note was subject to a condition precedent, which is not the case here. For it is McGowen's contention not that something had to happen before Herzog could demand payment, but that Herzog could never demand payment. Parol evidence is always admissible to prove a fraud, *Franklin v. White*, 493 N.E.2d 161, 165 (Ind.1986); *In re Estate of Fanning*, 263 Ind. 414, 333 N.E.2d 80, 85 (1975); *Kruse Classic Auction Co. v. Aetna Casu-*

*alty & Surety Co.*, 511 N.E.2d 326, 330 (Ind.App.1987), but McGowen does not contend that when Herzog agreed to the scheme for making the prepayment of the purchase installment look like a loan it intended to double-cross McGowen by demanding payment of the notes. If there was a fraud, it was against the Internal Revenue Service, though no one is arguing this. With fraud out of the picture and the scope of the parol evidence rule applicable to promissory notes conceded by McGowen to be governed by section 3–306(c) rather than 3–306(b), McGowen is left with the special-purpose doctrine and Herzog concludes that a sham case is outside that doctrine, which, as we have noted, he believes to be limited to conditions precedent.

There are cases, none from Indiana, on both sides of the question whether "delivery for a special purpose" is limited to conditions precedent, although the majority view is that it is not. Compare *Perez–Lizano v. Ayers, supra*, 695 P.2d at 469–70, with *American Underwriting Corp. v. Rhode Island Hospital Trust Co., supra*, 303 A.2d at 125. Text and history can help us choose between these positions, though history more than text. Section 3–306(c) expressly recognizes a defense of "nonperformance of any condition precedent," making the "special purpose" defense redundant on Herzog's construal of it. But redundancy is built into section 3–306(c), as we have seen, and maybe this is another example of it. So let us turn to history.

Until sometime after the middle of the nineteenth century, courts were highly reluctant to admit parol evidence, in suits on promissory notes, for any purpose other than to prove fraud or mistake. John Barnard Byles, *A Treatise on the Law of Bills of Exchange* 169 note *l* (4th Am. ed. 1856). A little later, they were allowing such evidence in three additional types of case: delivery of the note together with a mortgage deed, with the note as additional security for payment of the mortgage; delivery of the note to escrow; and delivery contingent on the satisfaction of a condition precedent. *Id.* at 112–13 (14th ed. 1885). Some courts also allowed the admission of parol evidence "to show that a contract

signed and delivered was never intended to be the real contract between the parties." *Id.* at 113 note *o*. One case—oddly enough it is factually similar to ours—used the term "special purpose" to describe the defense in a "no obligation" or "sham" case. *Juilliard v. Chaffee*, 92 N.Y. 529, 534 (1883). And when the English codified their law of negotiable instruments in 1882, they expressly allowed evidence (other than against a holder in due course) that delivery had been "conditional *or for a special purpose only, and not for the purpose of transferring the property in the bill.*" James W. Eaton & Frank B. Gilbert, *A Treatise on Commercial Paper and the Negotiable Instruments Law* 697 (1903). The meaning brought out by the words that we have italicized seems unmistakable: the "special purpose" defense encompassed all cases in which the negotiable instrument had not been intended to create an enforceable obligation. Byles, *supra*, at 122 (17th ed. 1911).

The American Negotiable Instruments Law—the first statute drafted by the National Conference of Commissioners on Uniform State Laws—copied the English provision word for word. Joseph Doddrige Brannan, *The Negotiable Instruments Law Annotated* 129 (4th ed. 1926); see also *id.* at 135–41. Later, however, darkness descended, and we find some authorities distinguishing among condition cases, no-obligation cases, and special-purpose cases. Annot., "Admissibility of Parol Evidence to Show That a Bill or Note Was Conditional, or Given for a Special Purpose," 20 *A.L.R.* 421, 490, 498–502 (1922); 4 William D. Hawkland & Larry Lawrence, *Uniform Commercial Code Series* § 3–306:07, at p. 481 (1990). This proliferation of unhelpful distinctions was abetted by the fact that the Uniform Commercial Code, in recodifying negotiable instruments law, dropped the explanatory phrase "and not for the purpose of transferring the property in the bill" from the formulation of the special purpose defense. But this was done without any intention of changing the meaning of the defense as it had appeared in the Negotiable Instruments

Law. "Notes and Comments to Tent. Draft No. 2—Art. III," 3 *Uniform Commercial Code: Drafts* 186–87 (Elizabeth Slusser Kelly ed. 1984). Certainly nothing in the history of the Uniform Commercial Code suggests a purpose of abolishing the "no obligation" defense and returning to the law as it existed before the Civil War. The tendency of our law for almost a century has been to relax strict rules, perhaps because of growing (though possibly misguided and even sentimental) confidence in the ability of judges and juries to resolve factual questions (such as, What *was* the purpose of McGowen's notes?), with reasonable accuracy and at reasonable cost, by sifting testimony. The legal realists who, led by Karl Llewellyn, drafted the Uniform Commercial Code were leaders in the movement to soften the contours of strict common law rules. See, e.g., UCC §§ 2–103(1)(b), 2–204, 2–205.

It hardly matters whether the no-obligation cases are subsumed under the special-purpose defense or set off by themselves or, as seems simplest and therefore—no other values being at stake so far as we can see—preferable, assimilated to the general contract doctrine that allows parol evidence to show that a contractual-looking document was not intended to be binding. The office of the parol evidence rule is to prevent parties to a written contract from seeking to vary its terms by reference to side agreements, or tentative agreements reached in preliminary negotiations. 2 Farnsworth, *supra*, § 7.2, at p. 197. In the case of a condition precedent the promisor is not trying to vary the terms, but to deny the enforceability of the promise by pointing to some condition that has not been fulfilled. The distinction may seem fine-spun and even arbitrary, but it has been deemed consistent with the policy behind the parol evidence rule, or at least a tolerable qualification of it. 2 *id.*, § 7.4, at pp. 211–15. Two points can be made on behalf of the distinction. The weaker, as it seems to us, is that without such an exception the rule would work dramatic forfeitures, by preventing a party from showing not merely that the terms were somewhat different from what they appeared to be

but that he had never agreed to do or pay anything. The stronger point is that the parol evidence rule, properly understood, is not a rule imposed on contracting parties from without but merely an inference, drawn from the language of the document, that the parties intended it to be the complete statement of their agreement, extinguishing any agreements that might have emerged from the preliminary negotiations. *Patton v. Mid–Continent Systems, Inc.*, 841 F.2d 742, 745 (7th Cir.1988); 2 Farnsworth, *supra*, §§ 7.2, 7.3, at pp. 197–98. The document is unlikely to reveal whether the parties intended it to be taken seriously, and if it does not, there is no basis for applying the rule. *In re H. Hicks & Son, Inc.*, *supra*, 82 F.2d at 279.

At all events, to allow parol evidence to expose a sham case such as this is alleged to be would make no greater inroads into the parol evidence rule than the cases on conditions precedent do. McGowen is not trying to change the terms in the promissory notes, but to show that the notes were not in fact intended to create a legally enforceable obligation. They were, not to put too fine a point on it, intended to fool the Internal Revenue Service. Herzog, perhaps fearing that it will be found to have been a party to this little deception, does not argue that McGowen's unclean hands should forfeit its right to make a sham-transaction defense, if there is such a defense, and we think there should be because we can think of no principled distinction between it and the condition-precedent defense that Herzog concedes is valid.

The policy of the law is to facilitate negotiability by allowing assignees of negotiable instruments to take free of defenses not obvious on the face of the note. *Northwestern National Ins. Co. v. Maggio*, 976 F.2d 320 (7th Cir.1992). But that policy is expressed in the doctrine of holders in due course. *Id.* Herzog made no effort to discount the notes to one who would have been such a holder and therefore could have enforced the notes against McGowen regardless of the oral agreement

not to enforce them on which McGowen relies in this suit.

The judgment is reversed and the case remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.